(Court of Appeal, Parish of Orleans.)

# EZILDA VON BUELOW, TESTAMENTARY EXECU-TRIX vs. THE LIFE INSURANCE COMPANY OF VIRGINIA.

The defense of suicide to a suit on a life insurance policy is sustained where the facts and circumstances proved exclude with reasonable certainty any hypothesis of death by any other means.

Appeal from the Civil District Court, Division "B."

Robert O'Conner, for plaintiff and appellant.

Howe, Fenner, Spencer & Cocke, B. J. Mayer, defendant and appellee.

GODCHAUX, J.—The issues and facts in this case, as well as the conclusions of the lower Court are clearly stated in the following written reasons handed down by the Judge a qua in support of his judgment.

"This is an action on a life insurance policy for one thousand dollars on the life of Edward Von Buelow.

"The defense is that the deceased committed suicide, and that the policy excluded liability in cases of self-destruction, sane or insane.

"The law in this State is, that in an action on a life insurance policy when the defense is self-destruction, the burden of proof is on the insurer to establish the suicide, and when circumstantial evidence only is relied on, the defense fails unless the circumstances preclude with reasonable certainty any

hypothesis of death by accident or by the act of another. **46 A. R., p. 1189,** and cases therein cited.

"The facts are as follows:

"Edward Von Buelow was of German descent, said to have been a relative of the German Chancellor. He was employed as a revenue inspector by the United States Government, and was stationed at the Navy Yard in Algiers. He was living with a negro woman as man and wife, claiming to be married to her, by whom he had three children, and with whom he lived at 613 Napoleon Avenue, in this City.

"On the 9th day of November, 1909, he and his alleged wife were charged in the First City Criminal Court of this City with violating Act 87 of 1908, relative to concubinage. He was arrested, arraigned, plead not guilty, and was released on bond.

"On the 14th of November he left his home as usual. No one knew where he had gone or on what particular ship he was inspecting.

"On November 17th, at one-forty p. m., he was found in an old water closet on the excavating, dumping grounds on the river and at the lower end of McLellanville, by a negro woman, dead. His body was in a sitting posture, with a wound in the right temple, inflicted with a pistol. The holes and cracks in the closet were closed with old pieces of cloth. The woman told two young men, white, John and Charley Oliver, brothers, both men of bad character. what she had seen. They went to the water-closet with this negro woman, Celia Richardson. They did not touch the body; saw it in a sitting posture, with a wound in the temple and blood on the shirt; found deceased's hat and umbrella in the closet. Very soon after the police were notified,

and arrived. They examined the body, and found, in addition, a note partly out of the side pocket of the coat.

"The note was dated '11/14/09' and read 'please turn my body and property over to my wife, Mrs. E. W. Von Buelow, 613 Napoleon Avenue, City.' No pencil was found.

"The Oliver brothers were immediately arrested charged with larceny of the pistol, and they confessed having stolen it. There is no evidence, circumstantial or direct, that the body was robbed.

"The body was sent to the morgue; an inquest was there held, and the Coroner's jury found that death had been caused by a gunshot wound in the head at a point at the temple bone about one inch above the right ear, and was extracted about three inches left of the point of entrance, and that in its course it perforated the brain. The body was then sent to the deceased's home and afterwards buried.

"This evidence excludes with reasonable certainty any hypothesis of death by accident, or by the act of another. The deceased, if he accidently had shot himself, from the nature of the wound, would not have had the strength, after the accident, if he so desired, to stop the holes and cracks of the closet and write a note giving his residence and what disposition he wanted made of his body. Besides, the note was written November the 14th, 1909, three days before his body was found—November 17th, 1909. No murderer or assassin would likely have known where the deceased lived and would have written the note found on the body nor would he have stopped the holes in the closet.

"The evidence proves with reasonable certainty

that the deceased came to his death by his own hands. It is the only reasonable conclusion to adopt. The motive for the act is found in the mortification he would suffer when his family and friends in Europe would learn that he had been arrested, and was to be tried for violating the laws of his adopted country, and in the mortification and ostracism from his friends here when they learned that he claimed he had been married and was living with a negro woman, by whom he had had three children, against the sentiment of almost the entire community, and in violation of the public policy and laws of the State. On no reasonable theory or hypothesis under the facts shown can it be said that the deceased accidently killed himself or was murdered.

"The facts in this case differ from the facts in the numerous cases cited by plaintiff's counsel, and therefore, they are not applicable.

"For these reasons judgment is rendered for the defendant."

Plaintiff complains of these findings of fact of the lower Court particularly with respect to the note which was found protruding from the pocket of the deceased. The record shows, however, that a note was found on the deceased and that a copy thereof was made upon the police records in the form recited in the foregoing opinion; that subsequently all papers found upon the deceased were turned over to plaintiff's representatives who failed to produce them on the trial of the case on the ground that they had been lost, and that subsequently the lower Court permitted secondary evidence of the contents of the note to be introduced. In this there was no error, and this Court's examination of the record convinces it, that the note and its contents were fully

proved, notwithstanding there is some evidence to the contrary offered on behalf of plaintiff.

In this as well as in other respects the opinion of the lower Court upon the facts coincides with ours, and its conclusions of law upon the facts are likewise approved.

The authorities relied on by plaintiff are not in point, for in those cited, namely, Leman vs. Manhattan Life Insurance Co., 46 Ann., 1189; Boynton vs. Equitable Life Insurance Society, 105 La., 202; Hastings vs. Knights of of Honor, 3 Court of Appeal, 337; Philips vs. Insurance Co., 26 Ann., 404; and Brignac vs. Pacific Mutual Insurance Co., 112 La., 574, the facts proved were not such as to exclude the hypothesis of death by accidental means.

The Court finds no error in the judgment appealed from and it is accordingly affirmed.

Judgment affirmed.

February 19, 1912.

————o————

5407.

(Court of Appeal, Parish of Orleans.)